J-A15022-25
J-A15023-25
J-A15024-25

2026 PA Super 70

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAMIEN MANCUSO | : | |
| | : | |
| Appellant | : | No. 247 MDA 2024 |

Appeal from the Judgment of Sentence Entered July 21, 2023
In the Court of Common Pleas of Lackawanna County
Criminal Division at No:  CP-35-CR-0001822-2020

---

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN DAVID MANCUSO | : | |
| | : | |
| Appellant | : | No. 280 MDA 2024 |

Appeal from the Judgment of Sentence Entered July 21, 2023
In the Court of Common Pleas of Lackawanna County
Criminal Division at No:  CP-35-CR-0001774-2020

---

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RIAN DANA MANCUSO | : | |
| | : | |
| Appellant | : | No. 432 MDA 2024 |

J-A15022-25
J-A15023-25
J-A15024-25

Appeal from the Judgment of Sentence Entered July 21, 2023
In the Court of Common Pleas of Lackawanna County
Criminal Division at No: CP-35-CR-0001773-2020

BEFORE: BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY STABILE, J.: **FILED APRIL 10, 2026**

Three brothers, Appellants Damien Mancuso ("Damien"), Sean Mancuso ("Sean"), and Rian Dana Mancuso ("Rian"), were tried together and were convicted of various sexual offenses against a single complainant, B.P. The court sentenced each appellant to a term of imprisonment. Because Appellants are brothers who were tried together, we decide their appeals in a single opinion for ease of disposition. We reverse Damien's judgment of sentence on due process grounds pursuant to **Commonwealth v. Devlin**, 333 A.2d 888 (Pa. 1975), as a result of the Commonwealth's failure to specify the date of his offense with sufficient particularity. We reverse Rian's judgment of sentence and remand for a new trial because (1) the court abused its discretion by consolidating his trial with Damien's trial, and (2) the Commonwealth made prejudicial comments during closing argument that encouraged the jury to find Rian guilty by association with his brothers. Finally, we affirm Sean's convictions but remand for resentencing because the trial court erred by failing to merge his convictions for involuntary deviate sexual intercourse ("IDSI") and indecent assault for purposes of sentencing.

_____

[*] Former Justice specially assigned to the Superior Court.

- 2 -

The trial court summarized the evidence adduced during Appellants' trial

as follows:

The victim, B.P., was a minor at the time of the above-mentioned incidents, but at the time of trial she was thirty-three (33) years of age. B.P. testified that in the year 2003, at a time when she was fourteen (14) years old, she began to frequent a business known as Adventure Games, located on Route 6, in Lackawanna County. B.P. indicated that the business consisted of a retail store as well as a place for individuals to gather socially and play card/board games and video games, such as Dance Dance Revolution (DDR).

B.P. stated that Adventure Games was located in the former K-Mart plaza and that the inside of the business consisted of two rooms. The left side contained computers and an area to purchase supplies and snacks. The right-hand side was separated from the left and could only be accessed through an exterior door on the front of the building. B.P. indicated that the right-hand side of the business was known as the DDR room.

B.P. stated that Adventure Games became a big part of her life because at that time she did not have many friends and Adventure Games was where her friends were and where she could be herself. B.P. testified that she frequented Adventure Games "[a]pproximately three or four times a week." She also testified that she learned that Sean Mancuso was the owner of Adventure Games when he introduced himself to her and showed her around the establishment. B.P. further testified that after patronizing the business for some time, she met Damien as well as Rian Mancuso and learned that Rian and Sean were brothers of Damien. B.P. stated that both Damien and Rian were both adults as opposed to minors and frequented Adventure Games at the times that she did.

B.P. further testified that she received special treatment from Damien, Sean and Rian. She indicated that she turned fourteen years old on August 25, 2003, and after this time an inappropriate interaction took place with Rian. B.P. explained that while she was sitting in the DDR room when Rian joined her and they began engaging in conversation. She testified that Rian commented as

to her appearance and maturity related to her age. B.P. further stated that the conversation turned to the topic of her menstrual cycle and the notion of having sexual intercourse with females during their period. B.P. testified that

> During the course of that conversation he took my hand, and he placed it over his pants on his now erect penis. I-I froze at first, and then I kind of jumped up, stood up. And that's when he lifted — I was wearing a dress. That's when he lifted my skirt to place his face to my genital region or my underwear and inhaled.

B.P. further testified that when Rian did this, he pressed his nose and mouth against her vaginal area. She stated that after she froze, she "let out a yelp, a shout[,]" after which Sean entered the DDR room and asked her to wait outside while he spoke to Rian.

B.P. indicated that she left the DDR room via the front door, which led out to the parking lot where she waited for Sean. She stated that Sean joined her outside and asked her to walk with him and that they needed to have a discussion. B.P. testified that Sean "explained to [her] that girls like [her] could get guys like his brother, Rian, in trouble. And that it was [her] responsibility to make sure that [she] didn't put [herself] in positions where good men could be in trouble."

B.P. further stated that she and Sean walked around to the rear of the building. B.P. testified while at the rear of the building, Sean "explained to [her] that just like [she] could get his brother in trouble he needed to have something on [her] that he could use to get [her] in trouble. And that was fair, fair is fair." B.P. stated that she informed Sean that she "would do anything." B.P. testified that Sean stated, "You're going to have to give me some kisses." B.P. stated that she assumed Sean wanted her [to] kiss his face and when she tried to comply, Sean stated, "That's not what we're talking about. That's not what I meant." B.P. stated that Sean "undid his jeans and exposed his penis, and he instructed [her] that [she] was to kiss him." B.P. testified that she was "instructed to kiss the tip and the shaft."

B.P. indicated that she complied with Sean's request and kissed his now erect penis "five or six times[,]" as he directed her as to

how and where to kiss him. B.P. stated that after Sean told her she could stop, he "smooshed the end—the tip of his penis into [her] lips." After which, B.P. testified that Sean explained to her "that now he has something because he would tell everybody [she] was a slut[]" and "that everybody would find out that [she] was gross, and that [she] would lose [her] friends and [her] hangout spot[.]"[1]

B.P. stated that after her encounter with Sean she believed, as a fourteen-year-old child, that all things were even and at that time other individuals her age began to appear at Adventure Games, so she stayed to interact with those individuals.

B.P. further testified that she continued to frequent Adventure Games as Sean instructed her to do so to avoid any suspicion and because it's the place that her friends socialized, and that social aspect mattered to her at the time because she "didn't have anything else."

During her testimony, B.P. stated that she continued to frequent Adventure Games. B.P. testified that she also had an encounter with Damien, roughly two years later, when she was sixteen years old. She stated that at the time she was sixteen years old [and] resided with her grandmother in Peckville, Pennsylvania. B.P. testified that while living with her grandmother, her grandmother imposed a curfew on her, which she attempted to regularly abide by.

B.P. testified that on one occasion she was at Adventure Games, and she made a request to the group of individuals there for a ride home. B.P. stated that Damien offered to drive her home that evening and she accepted that offer. B.P. testified that, on that evening, Damien drove, what she described as a boxy, four-door car. She further testified that she sat in the front passenger seat as Damien drove.

B.P. testified that the two departed from Adventure Games and drove towards Peckville, but Damien detoured to the area of the

---

[1] We note that B.P. added that Sean told her that "if anybody ever found out [about this incident] he'd have to kill me." N.T., 10/17/22, at 63. B.P. believed him. *Id.*

vacant Walmart and Wegman's grocery store near Route 6 in Dickson City, Pennsylvania. She testified that she said to Damien, "Hey, I don't live at Wegmans." B.P. then testified that Damien pulled into the parking lot of the vacant Walmart.

B.P. testified that after Damien parked in the lot of the vacant Walmart, he told her that she needed to pay for the ride and that she should have known that. She testified that she [was told she] could pay for the ride with "[a]ss, cash, or grass." B.P. informed Damien that she did not have anything and was confused since Damien agreed to drive her home. She testified that Damien became angry and when she noticed his mood had changed, she attempted to exit the vehicle. B.P. stated that as she did this, Damien pulled her back into the vehicle, closed the car door, held her by the neck and throat, and undid his pants.

B.P. testified that [Damien] told her, "You're either going to suck my dick or I'm going to fucking kill you." She stated that she was afraid for her safety because Damien was larger and much stronger than her and already held her by her neck. B.P. testified that after he threatened her, he began to pull her head down toward his now exposed penis. B.P. testified that she proceeded to perform oral sex on Damien until completion, wherein she indicated that he ejaculated into her mouth. She stated that once this occurred, Damien pushed her off him and she quickly exited the vehicle. B.P. testified that at that point she spit Damien's semen onto the ground and proceeded into the Wegman's grocery store where she rinsed out her mouth and purchased a Gatorade. She testified that she immediately started to walk to her grandmother's house and when she arrived she was admonished for breaking her curfew.

B.P. testified that she did not inform her grandmother as to what occurred with Damien. However, she stated that she did inform Sean. B.P. testified that in response, Sean stated, "Of course [Damien] was going to expect some kind of payment for a ride. There's no such thing as a free lunch." B.P. further testified that Sean insinuated that she created the situation and directed her to keep the situation private, as before with himself and Rian.

Pa.R.A.P. 1925 Opinion, **Commonwealth v. Damien Mancuso**, 10/8/24, at

3-8 (citations omitted; cleaned up).

In October 2019, well over a decade after the events in question, B.P. reported the incidents to Detective Michelle Mancuso[2] of the Lackwanna County District Attorney's Office. N.T., 10/18/22 (PM), at 20-21. In 2020, the Commonwealth filed informations against Appellants alleging that they committed their offenses over a five-year period between January 1, 2003, through December 31, 2007.

The original information against Damien charged him with IDSI and corruption of minors. The original information against Rian charged him with corruption of minors and indecent assault under 18 Pa.C.S.A. § 3126(a)(1) and (a)(8). Each of the charges against Rian alleged that he forcefully lifted B.P.'s skirt and smelled her vagina.

On November 24, 2020, the Commonwealth filed an amended information against Damien charging him with committing IDSI, sexual assault, corruption of minors and indecent assault against B.P. between January 1, 2003 and December 31, 2007.

The court ordered all pretrial motions to be filed on or before February 1, 2021. On February 3, 2021, Damien filed a pretrial motion to dismiss the charges against him. His motion asserted that B.P. reported to the police that Damien had assaulted her on one occasion "in the fall after her sixteenth

---

[2] Detective Mancuso is not related to Appellants. N.T., 10/18/22 (PM), at 20.

birthday." Omnibus Pretrial Motions, 2/3/21, at 4 (cleaned up). Damien objected to the Commonwealth's inability to specify the date during the five-year period alleged in the amended information in which he allegedly assaulted B.P. *Id.* at 9, 14. Due to this lack of specificity, Damien continued, he could not present an alibi defense or present witnesses in support of an alibi, thus violating his due process rights under the United States and Pennsylvania Constitutions. *Id.* Damien and Rian also moved to sever the charges against them from the charges against their other brothers.

On March 3, 2021, the Commonwealth filed a second amended information against Damien charging him with committing IDSI, sexual assault, corruption of minors and indecent assault against B.P. "between Thursday, the 25th day of August, 2005 and Thursday, the 24th day of August, 2006," a one-year period in which B.P. was sixteen years old. Second Amended Information, *Commonwealth v. Damien Mancuso*, 3/3/21.[3]

On April 30, 2021, the court convened a hearing on Appellants' pretrial motions. During the hearing, Damien acknowledged that the second amended

_____

[3] The Commonwealth also filed amended informations against Sean and Rian alleging that their offenses took place over a one-year period between August 25, 2003, and August 24, 2004, when B.P. was fourteen.

The Commonwealth ultimately proceeded to trial against Rian on the charges of corruption of minors and indecent contact under 18 Pa.C.S.A. § 3126(a)(1). As to each of these charges, the Commonwealth made the same allegation that it made in the original information—Rian forcefully lifted B.P.'s skirt and smelled her vagina.

- 8 -

information reduced the date range of his alleged offenses from five years to one year. N.T., 4/30/21, at 5-6. He argued, however, that the one-year timeframe was still overly broad and made it impossible for him to pursue a potential alibi defense. *Id.* at 6-9. Damien noted that B.P. was no longer a minor[4] and therefore should be able to identify the date or date range with better specificity. *Id.*

On December 3, 2021, the court denied Damien's motion for dismissal. Order, 12/3/21, at n.1 (declining to dismiss on ground that Commonwealth did not provide precise date of assault; concluding that Damien's reliance on ***Devlin***, ***supra***, was "misplaced"). The court also denied Damien's and Rian's motions for severance. *Id.*

On October 11, 2022, the Commonwealth filed a third amended information against Damien in which it withdrew two charges previously alleged against Damien, sexual assault and indecent assault. The third amended information alleged that the remaining two charges, IDSI and corruption of minors, took place "between Thursday, the 25th day of August, 2005 and Thursday, the 24th day of August, 2006." Third Amended Information, ***Commonwealth v. Damien Mancuso***, 10/11/22. The third amended information, like the second amended information, alleged that

---

[4] At the time of the pretrial hearing, B.P. was either 31 or 32 years old. As stated above, she was 33 years old at the time of trial.

Damien's offenses took place during a one-year period in which B.P. was sixteen years old. *Id.*

Following a three-day trial, a jury convicted (1) Damien of IDSI and corruption of minors, (2) Sean of IDSI, corruption of minors, and indecent assault, and (3) Rian of corruption of minors and indecent contact. The court sentenced Damien to 5-10 years' imprisonment, Sean to 96-194 months' imprisonment, and Rian to 6-12 months' imprisonment.

**TIMELINESS OF APPEALS**

Before proceeding with the merits of these appeals, we examine whether each appeal is timely.

On July 21, 2023, the court sentenced all three appellants. On July 30, 2023, Damien filed timely post-sentence motions within ten days after sentencing raising, *inter alia*, a motion for judgment of acquittal due to the Commonwealth's failure to specify the date of Damien's offense with a sufficient degree of particularity. On January 29, 2024, the clerk of the trial court entered an order denying the post-sentence motions by operation of law. On February 13, 2024, Damien appealed to this Court. Both Damien and the trial court complied with Pa.R.A.P. 1925.

Similarly, on July 28, 2023, Rian filed timely post-sentence motions within ten days after sentencing. On February 27, 2024, the clerk of the trial court entered an order denying the post-sentence motions by operation of

- 10 -

law.  On March 22, 2024, Rian appealed to this Court.  Both Rian and the trial court complied with Pa.R.A.P. 1925.

Both Damien's and Rian's appeals are timely.  A notice of appeal must be filed within 30 days of the entry of the order being appealed.  Pa.R.A.P. 903(a).  If the defendant files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion.  Pa.R.Crim.P. 720(A)(2)(a).  The trial court has 120 days to decide a post-sentence motion, and if it fails to decide the motion within that period, the motion is deemed denied by operation of law.  Pa.R.Crim.P. 720(B)(3)(a). When the motion is deemed denied by operation of law, the clerk of courts shall enter an order deeming the motion denied on behalf of the trial court and serve copies on the parties.  Pa.R.Crim.P. 720(B)(3)(c).  A court breakdown occurs, however, when the clerk fails to enter an order within the 120-day period deeming post-sentence motions denied by operation of law pursuant to Rule 720(B)(3)(c). *See Commonwealth v. Patterson*, 940 A.2d 493, 498-99 (Pa. Super. 2007) (citing *Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa. Super. 2003)).  When such a breakdown occurs, an appeal filed within 30 days of an order entered outside the 120-day window is timely. *Commonwealth v. Braykovich*, 664 A.2d 133, 137-38 (Pa. Super. 1995).

Here, the 120-day period for decision on Damien's post-sentence motion expired on November 27, 2023, but the clerk of courts failed to enter an order deeming the motion until January 29, 2024.  Since Damien filed his notice of

appeal on February 13, 2024, within thirty days of the order, his appeal is timely. **Braykovich**, 664 A.2d at 137-38.

Similarly, the 120-day period for decision on Rian's post-sentence motion expired on Monday, November 26, 2023, but the clerk of courts failed to enter an order deeming the motion until February 27, 2024. Since Rian filed his notice of appeal on March 22, 2024, within thirty days of the order, his appeal is timely. **Id.**

The facts relating to Sean's appeal are somewhat different. On July 21, 2023, the court sentenced Sean. On August 1, 2023, the court entered an "Order Granting Motion for Extension of Time" purporting to grant Sean's motion for extension of time and giving him until August 25, 2023 to file any post-sentence motions, even though no motion for extension appears on the trial court docket or in the record. On August 18, 2023, Sean filed counseled post-sentence motions. On January 24, 2024, the court entered an order denying Sean's post-sentence motions by operation of law. On February 20, 2024, Sean filed a notice of appeal. Both Sean and the trial court complied with Pa.R.A.P. 1925.

Procedurally, Sean's August 18, 2023 post-sentence motions were untimely and did not toll the 30-day appeal period, since he did not file post-sentence motions within 10 days after sentencing, and there is no motion in the record seeking an extension of time within which to file post-sentence motions. **See** Pa.R.Crim. 720(B)(3)(b) (upon motion within the 120-day

- 12 -

period, the judge may grant one 30-day extension). Nevertheless, the August 1, 2023 order advised that Sean had until August 25, 2023 to file post-sentence motions. In our view, a breakdown occurred in the operation of the court because it granted an extension despite the absence of a timely filed motion for an extension. This breakdown excuses Sean's untimely motions. *Cf. Patterson*, *supra*.

The 120-day period for decision on Sean's post-sentence motions expired on Monday, December 18, 2023, but the clerk of courts failed to enter an order deeming the motion until January 20, 2024. Since Sean filed his notice of appeal on February 20, 2024, within 30 days of the order, his appeal is timely. *Id.* Both Sean and the trial court complied with Pa.R.A.P. 1925.

Having determined that each of these three appeals are timely, we now may proceed to address the merits of each of them.

**DAMIEN'S APPEAL**

Damien raises the following issues in his appeal, which we re-order for purposes of convenience:

> I. Whether the trial court erred in finding sufficient evidence and rejecting [Damien's] due process challenge where the complainant alleged that [Damien] assaulted her one time approximately fifteen years before the accusation and she could not narrow the date of the incident down to anything more specific than a one-year range, thereby making it impossible for Appellant to defend against the allegations.
>
> II. Whether the trial court erred in granting the Commonwealth's motion to consolidate [Damien's] case with the cases of his co-defendants given that the cases had nothing in common other

- 13 -

than the location of the alleged assaults and the last names of the defendants, the two isolated incidents were separated by approximately two years, and the consolidation of the charges resulted in overwhelming prejudice and guilt by association in an otherwise extremely weak case.

III. Whether the trial court should have granted the post-sentence motion for a new trial because the verdict was against the weight of the evidence.

Damien's Brief at 5.

Because we find Damien's first issue has merit and is dispositive of his appeal, we do not address his second and third issues.

Damien argues that the court erred in finding the evidence sufficient to convict him of IDSI and corruption of minors due to the Commonwealth's failure to prove the date of his alleged assault on B.P. with sufficient particularity. Relying on *Devlin*, Damien contends that the Commonwealth deprived him of his due process right to present a defense by alleging in the second and third amended informations that the assault took place over a one-year period and failing to narrow this time period during trial.[5]

---

[5] We observe that Damien filed pretrial motions raising his due process argument on February 3, 2021, two days after the February 1, 2021 deadline ordered by the trial court. The trial court reviewed Damien's untimely motions on the merits, as it had the discretion to do. *See Commonwealth v. Westlake*, 295 A.3d 1281, 1286-87 (Pa. Super. 2023). The Commonwealth did not object to Damien's tardiness in the trial court or in this Court.

- 14 -

With respect to this issue, we summarize the due process responsibilities shouldered by the Commonwealth both in its charging instrument against the defendant and during trial:

The United States Supreme Court held in ***Jackson v. Virginia***, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that the Due Process Clause as incorporated by the Fourteenth Amendment requires that all convictions be supported by "sufficient proof — defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." ***Id.*** at 316, 99 S.Ct. 2781. We follow that approach, as stated in ***Commonwealth v. Brown***, 617 Pa. 107, 52 A.3d 1139 (2012):

> First, our standard of review, like the ***Jackson*** standard, recognizes the proper regard an appellate court must give to the fact-finder's evaluation of all of the evidence received at trial and, therefore, requires scrutiny of the totality of that evidence in the light most favorable to the Commonwealth, as verdict winner, and to draw all reasonable inferences in favor of the Commonwealth. Further, our Court's determination of the ultimate question of evidentiary sufficiency parallels the central inquiry under the ***Jackson*** standard, namely, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

***Id.*** at 1164 (citations, internal quotation marks, and footnote omitted).

The ***Jackson*** decision protects due process in a particular way: it operates as a check on the quality of the government's evidence in proving the crimes. Separately, due process requires that the Commonwealth give fair notice in the charging instrument. "In criminal ... matters, the United States Supreme Court has discerned a due process requirement that alleged misconduct must be identified with particularity in the essential notice conferred." ***In re R.M.***, 567 Pa. 646, 790 A.2d 300, 305 (2002). The criminal information "sets the stage for trial and what the Commonwealth intends to prove." ***Commonwealth v. King***, 660

- 15 -

Pa. 482, 234 A.3d 549, 563 (2020). This implicates basic due process protections. "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948). These due process protections are linked to the due process protections encompassed by a sufficiency-of-the-evidence claim. The charging document puts the defendant on notice of what the Commonwealth intends to prove, and, in turn, the evidence presented at trial must be of sufficient quality to enable a rational fact-finder to conclude that the Commonwealth has proved the crimes specified within the information beyond a reasonable doubt.

*Commonwealth v. Martin*, 323 A.3d 807, 817 (Pa. Super. 2024).

Our Supreme Court has further observed:

Just as it requires a criminal statute to give fair warning of the conduct proscribed, *see, e.g., Commonwealth v. Magliocco*, 584 Pa. 244, 883 A.2d 479, 487 (2005), due process requires that the criminal information provide fair notice of every crime of which a criminal defendant is accused, *see Commonwealth v. Khorey*, 521 Pa. 1, 555 A.2d 100, 108 (1989) … To comport with due process, the notice provided must be sufficiently specific so as to allow the defendant to prepare any available defenses should he exercise his right to a trial. *Commonwealth v. Little*, 455 Pa. 163, 314 A.2d 270, 273 (1974). Such notice ensures that, if the Commonwealth prevails at trial, the defendant's conviction is not arbitrary or oppressive. *See Commonwealth v. Kratsas*, 564 Pa. 36, 764 A.2d 20, 27 (2001) (noting that the fundamental fairness embodied in the Due Process Clauses of the United States and Pennsylvania Constitutions entitles "every individual to be free from arbitrary or oppressive government conduct").

*Commonwealth v. Sims*, 591 Pa. 506, 919 A.2d 931, 939-40 (2007).

To implement these due process principles, the Rules of Criminal

Procedure require an information to contain "the date when the offense is

alleged to have been committed if the precise date is known … provided that **if the precise date is not known** or if the offense is a continuing one, **an allegation that it was committed on or about any date within the period fixed by the statute of limitations** …" Pa.R.Crim.P. 560(B)(3). (emphasis added).

With these due process principles in place, we turn to our Supreme Court's decision in ***Devlin***. There, the defendant was accused of sodomizing a 22-year-old victim "who had the mental ability of a first or second grade child and the emotional stability of an even younger child." ***Id.***, 333 A.2d at 889. The defendant worked for a social agency and one of his roles was to supervise the victim's earnings and distribute them to the victim. This required the victim to visit the defendant's home twice a day for funds for lunch and dinner. One evening, the victim approached two police officers and stated that the defendant had perpetrated acts of sodomy upon him. This assault occurred on only one visit to the defendant's home. The victim testified that "'it was real dark outside'" during this visit, but he "could not give any indication as to the time of year, the month, day, or date when the crime occurred." ***Id.*** at 889.

The indictment alleged that the defendant committed sodomy on or about April 16, 1972, even though the victim had reported the incident to the police two days earlier, on April 14, 1972. The only proof at trial was that the crime took place sometime between February 1971 to April 1972. During

- 17 -

cross-examination, the defense attempted to discredit the victim's testimony by showing that two of his friends encouraged him to lodge a false accusation against the defendant so that the victim would receive more of his own funds from the defendant. The victim's testimony during cross-examination was "highly uncertain and contradictory," *id.* at 890, but he reasserted that the defendant had sodomized him. At the close of the Commonwealth's case, the defendant demurred to the prosecution's evidence on the ground that the Commonwealth had not fixed the date of the crime with sufficient particularity, and thus the charge was impossible to defend. *Id.* at 890. The trial court denied the demurrer, *id.*, and a jury found the defendant guilty of sodomy.

This Court affirmed in a per curiam order. **Commonwealth v. Devlin**, 225 Pa. Super. 138, 310 A.2d 310 (1973). The majority did not issue an opinion despite two dissenting opinions. Judge Hoffman, joined by another judge, dissented on the ground that, *inter alia*, "It would be an impossible burden for the defendant to offer an alibi for a fourteen month period." **Id.**, 310 A.2d at 312. Judge Spaeth concurred in Judge Hoffman's dissent but added:

> However, I believe it should be expressly stated that in reaching this result I do not wish to imply that when dealing with a victim who is a young child or who has no greater mental and emotional capacity than a young child the Commonwealth must always prove the actual date of the crime …
>
> [Instead,] [n]o fixed rule should be applied. Rather, in fact that the victim is emotionally young and confused should be weighed against the right of the defendant to know for what period of time

- 18 -

he may be called upon to account for his behavior. The fact that the victim cannot set a date for the crime should not necessarily be fatal to the Commonwealth's case, thus making the assailant virtually immune from prosecution. In the present case, this balance tips against the Commonwealth, for it does not appear why the Commonwealth could not have fixed the time of the incident by evidence other than by the testimony of the victim.

*Id.* at 312-13.

The Supreme Court granted allocatur. *Id.*, 333 A.2d at 889. The Court stated that "[t]he sole issue in this case is whether the Commonwealth proved the date of the crime with sufficient particularity to uphold the conviction," where "[t]he only proof at trial was that the crime occurred some time within a fourteen month period from February 1971 to April 1972." *Id.* The Court reversed the defendant's conviction on the ground that the failure to prove the date with sufficient particularity denied the defendant his due process right to an adequate opportunity to defend. *Id.* at 891.

The Court began by holding that this Court's decision in *Commonwealth v. Levy*, 146 Pa. Super. 564, 23 A.2d 97 (1941), stated the applicable rule of law. *Devlin*, 333 A.2d at 890. In *Levy*, an appeal from a sodomy conviction, the victim, an eleven-year-old boy, was unable to fix the date of the offense except to state that it occurred sometime in August or September of 1939. Other Commonwealth witnesses provided no assistance in fixing a more particular date. This Court reversed the conviction, stating:

'It may be conceded that in the prosecution of crimes of the kind here involved the Commonwealth is not required to prove their commission on the date laid in the indictment, but, failing in that,

- 19 -

we think it has the burden, in order to sustain a conviction, of proving their commission upon some other date, fixed with reasonable certainty and being within the prescribed statutory period . . ..

In other words, where a particular date or day of the week is not of the essence of the offense, the date laid in the indictment is not controlling, but some other reasonably definite date must be established with sufficient particularity to advise the jury and the defendant of the time the Commonwealth alleges the offense was actually committed, and to enable the defendant to know what dates and period of time he must cover if his defense is an alibi…'

'We do not understand the rule of the cases to be that the Commonwealth need not prove any date at all, but can sustain a conviction merely by proving that the offense must have been committed upon some unshown date within the statutory period. Our attention has not been called to any case so holding.'

**Devlin**, 333 A.2d at 890 (citing **Levy**, 23 A.2d at 99).

Turning to the facts in **Devlin**, the Court reasoned that

the rule announced in **Levy** [requires that] the date of the commission of the offense must be fixed with reasonable certainty. We do not feel that the Commonwealth's proof to the effect that the crime was committed on any single day within a fourteen-month period meets the 'sufficient particularity' standard . . . To hold otherwise would violate the notions of fundamental fairness embedded in our legal process …

**Id.** at 890-91. The Court emphasized that this holding was "required by the Fourteenth Amendment Due Process Clause of the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution."[6] **Id.** at 891.

---

[6] Article I, Section 9 of the Pennsylvania Constitution provides, "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him . . . . nor can
*(Footnote Continued Next Page)*

- 20 -

Under the federal Constitution, "if the opportunity to defend is inadequate, the defendant is denied due process of law." *Id.* The Pennsylvania Constitution "is violated where the defendant is substantially denied an opportunity to present a defense." *Id.*

The Court found the defendant's conviction unconstitutional because "[t]o defend against a charge of conduct occurring anywhere within a fourteen-month period was, for this appellant, a fundamentally unfair burden." *Id.* The Court elaborated:

> [W]e cannot sustain the contention that the date of the crime must be fixed with reasonable certainty only in situations where the defendant notifies the prosecution of, and attempts to prove, an alibi defense. Two reasons support our rejection of that proposition: First, although an alibi defense is the most obvious reason for the rule, the lack of a sufficiently particular date in the prosecution's proof can hamstring the defense in other ways. In this trial, for instance, the credibility of the victim was a serious issue. The appellant, because he did not have a sufficiently particular period of time to defend, was precluded from further attacking the credibility of the victim by showing (1) behavior of the victim after the incident which was inconsistent with the extremely severe conduct to which the victim was allegedly subjected, and (2) the physical and emotional trauma which would have necessarily resulted therefrom. Nor could the defendant attempt to prove that the victim did not visit his house on the date in question because there was no date or limited period of time asserted by the Commonwealth.
>
> Secondly, notification of an alibi defense was a futile gesture in this case because the date laid in the indictment was obviously an arbitrary one; the date in the information and indictment was April 16, but the crime had been reported on April 14. Moreover, it

---

he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land." *Id.* at 891.

would have been an impossible burden for the appellant to offer an alibi defense for a fourteen-month period.[2]

[2]*See* dissenting opinion of Hoffman, J., below, ***Commonwealth v. Devlin***, 225 Pa. Super. 138, 310 A.2d 310 (1973).

Here, as elsewhere, the pattern of due process is picked out in the facts and circumstances of each case. Due process is not reducible to a mathematical formula. Therefore, we cannot enunciate the exact degree of specificity in the proof of the date of a crime which will be required or the amount of latitude which will be acceptable. Certainly the Commonwealth need not always prove a single specific date of the crime. Any leeway permissible would vary with the nature of the crime and the age and condition of the victim, balanced against the rights of the accused.[3] Here, the fourteen-month span of time is such an egregious encroachment upon the appellant's ability to defend himself that we must reverse.

[3]*See* dissenting opinion of Spaeth, J., below, ***Commonwealth v. Devlin***, 225 Pa. Super. 138, 141, 310 A.2d 310, 312 (1973).

***Id.*** at 891-92 (citations and footnote omitted).[7]

_____

[7] Notably, the New York Court of Appeals, the highest court in New York, has analyzed this issue in a manner similar to ***Devlin***. ***See People v. Keindl***, 68 N.Y.2d 410, 419-20, 502 N.E.2d 577, 581, 509 N.Y.S.2d 790, 794 (1986). In ***Keindl***, the Court of Appeals held that the trial court erred by denying the defendant's motion to dismiss multiple counts of an indictment alleging sexual abuse against three children over periods of ten, twelve and sixteen months, respectively. The victims were between eight and thirteen years of age during the time of the offenses and thus capable of "discerning, if not exact dates, at least seasons, school holidays, birthdays and other events which could establish frame of reference to narrow the alleged time spans." ***Id.***, 502 N.E.2d at 581. Thus, the periods of ten, twelve and sixteen months alleged in the indictment were "so excessive on their face that they are unreasonable." ***Id.*** Although ***Keindl*** did not expressly refer to due process principles, it relied heavily on another decision involving a similar issue, ***People v. Morris***, 61 N.Y.2d 290, 473 N.Y.S.2d 769, 461 N.E.2d 1256 (1984), which grounded its analysis on due process principles.

*Devlin* places the burden of proof on the Commonwealth to "fix" the date of the offense with "reasonable certainty." *Id.* at 890. The defendant's claim in *Devlin* that the Commonwealth failed to satisfy this burden constituted a "demurrer" to the sufficiency of the evidence. *Id. Devlin* reversed the defendant's conviction by holding that the Commonwealth failed to satisfy its burden by failing to narrow the timeframe during its case-in-chief, thus making it "impossible" for the defendant to present an alibi defense. *Id.* at 892.

Subsequent to *Devlin*, this Court held that "for purposes of a *Devlin* claim, the Commonwealth must be allowed a reasonable measure of flexibility when faced with the special difficulties involved in ascertaining the date of an assault upon a young child." *Commonwealth v. Groff*, 548 A.2d 1237, 1241 (1988) (affirming conviction for one sexual assault on seven-year-old child at unspecified point over three-month period). Further, the Commonwealth "must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." *Commonwealth v. Benner*, 147 A.3d 915, 921 (Pa. Super. 2016). "[T]he due process concerns of *Devlin* are satisfied where the victim [ ] can at least fix the times when an ongoing course of [abuse] commenced and when it ceased." *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 990 (Pa. Super. 2007); *see also Benner*, 147 A.3d at 921.

Despite these and other post-**Devlin** cases[8] that afford the Commonwealth a "reasonable degree of flexibility" in ascertaining the date of a sexual assault, the present case fails to satisfy the due process standards articulated in **Devlin** and the mandates under Rule 560(B)(3) due to the Commonwealth's failure to specify, on or about any date, when Damien committed the alleged assault within the one-year period alleged in the second and third amended informations.

Significantly, Damien repeatedly placed the Commonwealth on notice of his due process argument. The original and amended informations against Damien charged him with assaulting B.P. over a five-year period. Damien filed pretrial motions raising a due process objection to the five-year timeframe in the amended information. The second and third amended informations accused Damien of committing a single assault over a one-year period between August 25, 2005, and August 24, 2006, when B.P. was sixteen years old. In response, Damien argued at the hearing on pretrial motions that the one-year timeframe was still too broad for him to pursue a potential alibi defense. Despite Damien's objections, the Commonwealth either failed or was unable to file further amendments that narrowed the time of the alleged assault.

---

[8] We discuss and distinguish post-**Devlin** decisions on pages 31-36, *infra*.

Even more problematic was the Commonwealth's failure during trial to narrow the time of the alleged assault in a manner that enabled Damien to present his defense. B.P. gave no testimony that narrowed the timeframe to less than one year. Since she was age sixteen at the time of the alleged assault, long past childhood, she should have been able to identify some event—*e.g.*, the season, the weather, whether school was in session, her birthday, **Keindl**, **supra** n.7—that narrowed the time span to less than one year.[9] She was perceptive enough to provide many other details with specificity, such as what she and Damien said and did during the incident, the location in which it took place, the features of Damien's car, and what she did after leaving the car. N.T., 10/17/22, at 66-72; N.T., 10/18/22 (a.m.), at 65-67. Despite this multitude of detail on other subjects, she failed to provide testimony that narrowed the timeframe of the offense. She testified that the incident took place on a "normal" day, N.T., 10/17/22, at 65, a vague statement that fails to distinguish the date of the incident from any other day during the one-year period alleged in the information. She also stated that

_____

[9] The affidavit of probable cause that the Commonwealth filed at the time of Damien's arrest in 2020 asserted that Damien's offenses took place "during the fall months" after B.P.'s sixteenth birthday. Affidavit of Probable Cause, 2/18/2020, at 3. At trial, however, B.P. did not testify that Damien assaulted her during the fall months after she turned sixteen. Nor was the affidavit of probable cause admitted into evidence. We express no opinion whether testimony that Damien assaulted B.P. during fall months would have satisfied **Devlin**, especially given the fact that she was well past childhood at the time of the alleged assault.

the parking lot where the incident took place was adjacent to an abandoned Walmart that had been closed but not yet demolished, *id.* at 67-68, but no witness gave any further testimony concerning the dates the Walmart closed or was demolished.

Further complicating the matter, B.P. did not report the alleged assault to the police until October 2019, over thirteen years after the end of the one-year period, thus further prejudicing Damien's ability to find witnesses or other evidence that could corroborate an alibi or some other defense. Arguably, this delay made it even more difficult for Damien to prepare his defense than the defendant in *Devlin*, where there was little or no delay between the end of the time period in which the assault allegedly occurred (April 1972) and the victim's report to the police (April 14, 1972).

*Devlin* concluded that the Commonwealth failed to satisfy its burden of proof because it was "an impossible burden for the appellant to offer an alibi defense for a fourteen-month period." *Id.* at 892. Here, as well, the one-year timeframe in the informations, in conjunction with B.P.'s failure to narrow the timeframe during her testimony, made it impossible for Damien to offer an alibi defense.

The Commonwealth argues unconvincingly that Dustin Siniawa's testimony remedied any *Devlin* problem. Siniawa testified that Damien Mancuso suggested to him that he had "popped B.P.'s cherry" and that this conversation occurred in late 2005 or early 2006. Commonwealth Brief In

Opposition To Damien's Appeal, at 19 citing (N.T., 10/18/22 (p.m.) at 14).[10]

This testimony, the Commonwealth contends, indicates that Damien's assault must have occurred sometime after August 25, 2005 but prior to or during early 2006. Construed in the light most favorable to the Commonwealth, Siniawa's testimony does not rescue the Commonwealth's case. While it might have compressed the timeframe to approximately half a year at best, this period still spanned too many months to establish the date of the offense with sufficient particularity. As in **Devlin**, it was "impossible" for Damien "to offer an alibi defense" to a time period this long. **Id.** at 892.

The Commonwealth does not attempt to rebut Damien's argument with Detective Mancuso's testimony,[11] but even if the Commonwealth did, the detective's testimony failed to narrow the timeframe of Damien's offense. Detective Mancuso testified that she interviewed "other people" about Damien's alleged assault, but "there [were] no eyewitnesses to that assault. So there was nobody that I would talk to that would give me any information regarding … that assault in the car that evening." N.T., 10/18/22 (PM), at 36.

_____

[10] We note Damien's statement that he "popped B.P.'s cherry" relates to vaginal intercourse, a different kind of sexual act than that charged in the criminal informations (IDSI) or testified to by B.P.

[11] The Commonwealth only analyzes Detective Mancuso's testimony in response to Sean's and Rian's appeals. **See** pp. 66-71, **infra**.

Although the detective references an "evening", her testimony did nothing to establish a date for that "evening".

The Commonwealth also claims that this case is distinguishable from **Devlin** in two respects. The Commonwealth lays the foundation for this argument in the following passage:

> Although the date of the crime must be fixed with reasonable certainty when the defendant notifies the prosecution and attempts to prove an alibi defense, there are also other considerations. [**Devlin**, 333 A.2d] at 891. For instance, in **Devlin**, the credibility of the victim was a serious issue. **Id.** The court in **Devlin** found that, there, 'the appellant, because he did not have a sufficiently particular period of time to defend, was precluded from further attacking the credibility of the victim by showing (1) behavior of the victim after the incident which was inconsistent with the extremely severe conduct to which the victim was allegedly subjected, and (2) the physical and emotional trauma which would have necessarily resulted therefrom.' **Id.**
>
> In **Devlin**, it was also significant that the date reflected in the indictment was obviously an arbitrary one; the date in the information and the indictment was April 16, but the crime had been reported on April 14. **Id.** at 892. Moreover, the Court found, it would have been an impossible burden for the appellant to offer an alibi defense for a fourteen-month period. **Id.**

Commonwealth's Brief In Opposition To Damien's Appeal, at 20-21. According to the Commonwealth, the first distinction between the present case and **Devlin** is that the defense attorneys herein were able to attack B.P.'s credibility during her testimony, while defense counsel in **Devlin** was not due to the victim's mental impairment. Defense counsel herein cross-examined B.P. about her post-assault behavior and lack of trauma, factors that the victim in **Devlin** could not be cross-examined about. Counsel elicited B.P.'s

admission that she continued to visit Adventure Games after the alleged assaults. This demonstrated that her behavior was inconsistent with the conduct to which she subjected, and that while she was not comfortable and was upset with what Sean and Rian were doing to her, she continued to visit Adventure Games. *Id.* at 21-22.

In our view, this distinction is immaterial. *Devlin* makes clear that the primary purpose for the rule to fix the date of the offense with reasonable certainty is to allow the defense to present any available alibi defense. *Devlin* makes this point repeatedly. *See id.* at 890-91 ("We do not feel that the Commonwealth's proof to the effect that the crime was committed on any single day within a fourteen-month period meets the 'sufficient particularity' standard of *Levy*. To hold otherwise would violate the notions of fundamental fairness embedded in our legal process"); *id.* at 891 ("an alibi defense is the **most obvious reason** for the rule") (emphasis added); *id.* at 892 ("it would have been an impossible burden for the appellant to offer an alibi defense for a fourteen-month period"). The same requirement is codified in Pa.R.Crim.P. 560(B)(3)'s rule that when the precise date of the offense is not known, the information must state that the offense occurred "on or about" some date. Thus, even though defense counsel was able to cross-examine B.P. on subjects that counsel in *Devlin* could not explore with the victim in that case, this does not override the facts that (1) the twelve-month timeframe in the informations against Damien made it impossible for him to prepare an alibi

defense, and (2) the Commonwealth failed to narrow this timeframe during its case-in-chief at trial.

The second distinction advanced by the Commonwealth is immaterial as well. The Commonwealth observes that the indictment in **Devlin** was illogical on its face because the alleged date of the offense was two days after the victim's report to the police. In the present case, there was no logic error in the informations. Once again, however, this distinction does not excuse the Commonwealth's failure to provide a timeframe in the informations that comports with due process or to narrow this timeframe during trial in its case-in-chief.

As in **Devlin**, there are no circumstances here that may excuse the use of a one-year timeframe in the amended informations which failed to identify the date of Damien's alleged assault "with reasonable certainty," **id.**, 333 A.2d at 890, or the Commonwealth's failure to narrow this timeframe during trial. B.P. was not a young child at the time of the offense, so she should have been able to describe when the offense occurred within the one-year time frame. She failed to do so, and the Commonwealth did not remedy this omission with evidence from an alternative source. Nor did this case involve a continuing course of conduct that made it impossible to pinpoint the date of the offense. It was the Commonwealth's burden to provide a reasonably certain timeframe, and it failed to satisfy this burden. We therefore are constrained to reverse Damien's judgment of sentence because it runs afoul of due process principles

articulated in **Devlin** and embodied within the United States and Pennsylvania

Constitutions.

The parties refer us to several post-**Devlin** decisions in which we found

**Devlin** distinguishable and affirmed convictions for sexual assault against

young children who were unable to provide specific dates in which they

suffered the assaults. **See Commonwealth v. Niemetz**, 422 A.2d 1369 (Pa.

Super. 1980); **Groff**, **supra**; **Commonwealth v. Jette**, 818 A.2d 533 (Pa.

Super. 2003). Our own research reveals several other such decisions. **See**

**Commonwealth v. Renninger**, 269 A.3d 548 (Pa. Super. 2022) (*en banc*);

**Benner**, **supra**; **G.D.M., Sr.**, **supra**; **Interest of K.E.N.**, 2024 WL 2858397

(Pa. Super., Jun. 6, 2024) (non-precedential).[12] The present case, however,

is far closer to **Devlin** than it is to any of these decisions.

Five of these decisions involve an ongoing course of conduct against one

or more victims. **See Niemetz**, **Renninger**, **Benner**, **G.D.M., Sr.,** and **Jette**,

**supra**. We discuss each in turn.

In **G.D.M., Sr.**, the defendant repeatedly assaulted a six-year-old child

over approximately seven months. The victim himself identified three

different occasions on which he was abused during that period, and he clearly

revealed to an investigating detective that there were several more such

---

[12] In another decision, **Martin**, **supra**, we held that the trial court improperly explored whether the evidence satisfied **Devlin** because the defendant did not raise this issue in his post-sentence motions. **Id.**, 323 A.3d at 815-19.

incidents. The victim remembered when the abuse began because it was contemporaneous with him beginning kindergarten, and he remembered that it terminated when the defendant was arrested. This Court held:

> Under these circumstances, we find that the due process concerns of *Devlin* are satisfied where the victim, as here, can at least fix the times when an ongoing course of molestation commenced and when it ceased. A six-year-old child cannot be expected to remember each and every date upon which he was victimized, especially where those events are numerous and occur over an extended period of time. Unlike adults, the lives of children, especially pre-school children or those who have only started school, do not revolve around the calendar, except to the extent that they may be aware of their birthday or Christmas, or the day a favorite television show airs. To require young children to provide such detail would be to give child predators free rein. Instantly, we find that the dates of the incidents were proven with sufficient specificity to satisfy due process.

*G.D.M., Sr.*, 926 A.2d at 990. In the present case, unlike in *G.D.M., Sr.*, there was only one alleged assault, and the victim, B.P., clearly was old enough to remember dates on the calendar as well as other temporal details that would isolate the date of the assault. Ironically, the six-year-old victim in *G.D.M., Sr.* narrowed the timeframe of the defendant's repeated assaults with greater specificity than B.P. did herein.

In *Niemetz*, the defendant repeatedly committed sexual assaults against the victim over a five-year period between 1972 and 1977 when the victim was between eleven and sixteen years old. We held that the evidence identified the time of the offenses with sufficient particularity, even though the victim could not identify specific dates on which she was assaulted. *Id.*,

422 A.2d at 442-43. The evidence, however, furnished several dates that permitted the jury to ascribe a "reasonably certain" date to the alleged offenses. For example, on April 5, 1976, the victim gave birth to a child fathered by the defendant, and on May 14, 1977, she had an abortion arranged and financed by the defendant. *Id.* at 443. These details distinguish *Niemetz* from *Devlin* and the present case, in which the victim failed to provide any details that isolated specific dates, or even specific months, within the lengthy time period alleged in the charging documents.

In *Renninger*, one victim alleged that the defendant assaulted her four times between 1997 and 2002, when she was between eight and twelve years old. Another victim alleged that the defendant assaulted her once during warm-weather months of 2000 when she was seven years old. An *en banc* panel of his Court properly rejected the defendant's *Devlin* claim. *Id.*, 269 A.3d at 558. As to the first victim, the Commonwealth satisfied *Devlin* by fixing the times when the defendant's multiple assaults began and ended against a young, prepubescent child. As to the second victim, the Commonwealth satisfied *Devlin* by narrowing the time of the assault against a seven-year-old child to a period of several months. In contrast, Damien's case involves only one alleged assault over a one-year period against a victim who was considerably older than the victims in *Renninger* but who failed to provide any additional details about the time of the assault.

*Benner* and *Jette* are distinguishable from the present case for much the same reasons as in *G.D.M., Sr., Niemetz* and *Renninger*.  *See Benner*, 147 A.3d at 920-21 (multiple instances of sexual abuse against fourteen-year-old girl, who testified that abuse began in July 2002 and ended in September 2004); *Jette*, 548 A.2d at 534-35 (two-year period of assaults that began when victim was eight years old).

The remaining two decisions cited above, *Groff* and *Interest of K.E.N.*, involve only one assault (the same situation as Damien's case), but other critical distinctions render *Groff* and *K.E.N.* inapplicable.  In *Groff*, a decision that the Commonwealth relies upon heavily in its brief,[13] a seven-year-old child testified to a sexual assault that occurred "on only one occasion" when she was six years old.  *Id.* at 1239.  Applying *Devlin*, we held that the Commonwealth "should ... come forward with any evidence which indicates when the alleged crime is most likely to have taken place."  *Id.* at 1241.  We held that the defendant's due process rights were not violated because the Commonwealth presented other evidence narrowing the timeframe down to a three-month period in the summer of 1985, when the victim's grandmother and stepmother noticed changes in the victim's behavior.

We explained:

We note that the Commonwealth would clearly prevail if appellant had been convicted of *repeatedly* abusing the victim during the

---

[13] *See* Commonwealth's Brief in Damien's appeal at 24-26.

summer of 1985. Case law has established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct. The instant case is more difficult because the evidence indicates that appellant did not abuse the victim more than once. We find, however, that in light of "the nature of the crime and the age and condition of the victim", the prosecution's proof as to the time of the criminal acts was constitutionally adequate.

When a young child is the victim of a crime, it is often impossible to ascertain the exact date when the crime occurred. He or she may have only a vague sense of the days of the week, the months of the year, and the year itself. If such children are to be protected by the criminal justice system, a certain degree of imprecision concerning times and dates must be tolerated.

The instant case concerns offenses which were directly observed by only two people: the perpetrator and the victim. The victim was at most six at the time she was sexually abused; at the age of seven she was placed under the strain of testifying as to the details of this traumatic event in open court. This witness obviously did not have the same capacity to recall times and dates which one might reasonably expect from an adult or from a somewhat older child. Moreover, this case may be distinguished from [**Devlin**]: in **Devlin**, the prosecution simply alleged that a crime had taken place sometime within a fourteen month period; in this case, the prosecution made a conscientious effort to present evidence as to the date of the crime from witnesses other than the victim, and to restrict the date of the crime to sometime within the final summer that appellant lived with the victim and her family.

*Id.*, 548 A.2d at 1242-43.

**Groff** is different from Damien's case in two critical respects. First, unlike the six-year-old victim in **Groff**, B.P. was sixteen at the time of Damien's alleged offense, and therefore B.P. had the "capacity to recall times and dates which one might reasonably expect from … a somewhat older child."

- 35 -

*Id.* at 1243. Second, the Commonwealth in ***Groff*** presented evidence from witnesses other than the victim that narrowed the date of the incident to a three-month period, the summer of 1985. Here, the Commonwealth presented the testimony of B.P. and Siniawa, but their testimony did not narrow the time period of the offense sufficiently to permit Damien to prepare an alibi defense. Thus, ***Groff*** does not support the Commonwealth's argument in support of affirming Damien's conviction.

In ***K.E.N.***, a juvenile was charged with a single assault against a four-year-old child "on or about March 2022." ***Id.***, 2024 WL at 2858397, *5. The witnesses' testimony established that the offense could have taken place over a six-week period between mid-February and the end of March. We held that this was sufficiently specific to defeat the juvenile's ***Devlin*** claim, given the young age of the victim and the juvenile's degree of access to the victim. ***Id.*** (six-week timeframe "was sufficiently narrow to give Appellant notice to enable him to mount a defense"). The present case stands in sharp contrast to ***K.E.N.*** because the timeframe was significantly longer and the evidence did not narrow the timeframe in a manner that enabled Damien to prepare a defense.

Based on our analysis of ***Devlin*** and careful review of relevant caselaw, we conclude that Damien's ***Devlin*** argument is meritorious, and that his judgment of sentence must be reversed. We do not make this decision lightly in view of the serious nature of the charges, but in view of the deficiencies in

the evidence and the similarities between this case and **Devlin**, we are compelled to reach this result.

Based on our decision to reverse on the **Devlin** issue, we need not review the two remaining issues in Damien's brief: an argument that the court erred by failing to sever his trial from his brothers,[14] and a challenge to the weight of the evidence.

## RIAN'S APPEAL

Rian raises the following issues in his appeal, which we have reordered for purposes of convenience:

1. Whether the evidence at trial was insufficient to support Appellant's convictions on all counts?

2. Whether the Trial Court should have granted Appellant's Motion for Arrest of Judgment and/or Judgment of Acquittal and/or Motion for New Trial because the trial Court denied Appellant's request for severance thereby forcing him to undergo jury trial at the same times as his brothers which was a manifest abuse of discretion, prejudicial and clear injustice to Appellant's rights?

3. Whether the Trial Court should have granted Appellant's Motion for Arrest of Judgment and/or Judgment of Acquittal and/or Motion for New Trial because the Trial Court allowed Dustin Siniawa to testify to Appellant's non-verbal conduct in or about 2006, which was not relevant or material to any criminal charge, and constituted inadmissible character evidence thereby depriving Appellant of a fair jury trial?

---

[14] In a submission after oral argument, Damien asked us to consider our Supreme Court's recent decision in **Commonwealth v. Walker**, —Pa.—, —A.3d—, 2026 WL 247429 (Jan. 28, 2026), in connection with his argument that the court erred by failing to sever his trial from his brothers. We need not consider **Walker** in view of our decision to reverse Damien's convictions under **Devlin.**

- 37 -

4. Whether the Trial Court should have granted Appellant's Motion for Arrest of Judgment and/or Judgment of Acquittal and/or Motion for New Trial because the Trial Court's reading of Pennsylvania Standard Jury Instruction § 3.19 was an error of law and/or an abuse of discretion?

5. Whether the Trial Court should have granted Appellant's Motion for Arrest of Judgment and/or Judgment of Acquittal and/or Motion for New Trial because the Commonwealth withheld the statements and/or interviews of third party witnesses and/or patrons of Adventure Games, and failed to disclose those witnesses' statements in discovery?

6. Whether the Trial Court should have granted Appellant's Motion for Arrest of Judgment and/or Judgment of Acquittal and/or Motion for New Trial because of the variance between the charges set forth in the Criminal Information and all subsequently Amended Criminal Informations versus the evidence, testimony and arguments presented by the Commonwealth at the time of Appellant's jury trial, which resulted in trial surprise for Appellant?

7. Whether the jury's verdict was against the weight of the evidence?

Rian's Brief at 6-8.

We first address Rian's challenge to the sufficiency of the evidence underlying his convictions for corruption of minors and indecent contact. When the defendant challenges the sufficiency of the evidence, our standard of review is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be

resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

***Commonwealth v. Smith***, 206 A.3d 551, 557 (Pa. Super. 2019).

An individual is guilty of corruption of minors when he, "being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or . . . aids, abets, entices or encourages any such minor in the commission of any crime." 18 Pa.C.S.A. § 6301(a)(1)(i).

Here, B.P. testified that when she was fourteen, she and Rian had a conversation in the DDR room at Adventure Games which turned toward how pretty B.P. was for her age, how mature she was, and how surprised Rian was that boys at school had not taken more of an interest in her. N.T., 10/17/22, at 56. During this conversation, Rian took B.P.'s hand and placed it over his pants on his erect penis. ***Id.*** at 57. B.P. froze at first, then jumped and stood up. ***Id.*** Rian then lifted the skirt of B.P.'s dress to place his face to her genital area, over her underwear, and inhaled. ***Id.*** B.P. froze at first and then let out a yelp. ***Id.*** at 59. This evidence was sufficient to sustain Rian's conviction for corruption of minors. ***See Commonwealth v. Kelly***, 102 A.3d 1025,

1032 (Pa. Super. 2014) (act of grabbing minor victim's genitals constituted corruption of minors).

The jury found Rian guilty of indecent assault under 18 Pa.C.S.A. § 3126(a)(8), under which an individual is guilty of indecent assault if he "has indecent contact with the complainant, causes the complainant to have indecent contact with the person . . . and . . . the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other." *Id.* "Indecent contact" means "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101. The evidence demonstrates that Rian caused B.P. to have indecent contact by taking her hand and placing it on his erect penis.[15]

According to Rian, the evidence demonstrates that B.P.'s testimony was false. He argues that the evidence shows: (1) in the fall of 2003, when his crimes allegedly took place, he was enrolled at Penn State University and was living in State College, Pennsylvania; and (2) the site of his alleged crimes, the DDR room at Adventure Games, did not exist until the winter of 2004,

---

[15] Neither the trial court nor the Commonwealth directs us to any evidence that demonstrates that Rian and B.P. were not married to each other at the time of the offense. Nevertheless, this element of indecent contact is not at issue. Rian does not contend in his appellate brief that he was married to B.P. at the time of the offense.

thus belying B.P's accusation that he assaulted her in the fall of 2003. He admitted during his testimony, however, that he came home from college "a handful of times" in the fall of 2003 on breaks or on weekends. N.T., 10/18/22, at 131-32; *see id.* at 136 (same). These arguments do not satisfy the demanding standard for a challenge to the sufficiency of the evidence. As noted above, the jury is free to believe all, part, or none of the evidence while passing upon the credibility of witnesses and the weight of the evidence produced. *Smith*, 206 A.3d at 557. Applying this standard, we conclude that the jury found B.P.'s testimony credible and rejected Rian's claims that the DDR room did not exist in the fall of 2003 and that he was away at State College at that time. We cannot reweigh the evidence adduced during trial and substitute our judgment for the jury on these issues. *Id.*

Next, we reach what we believe to be the central issue in Rian's appeal: whether the trial court erred in denying his motion to sever his case from Sean's and Damien's cases for purposes of trial. We review the decision to deny a motion to sever for abuse of discretion. *Commonwealth v. O'Neil*, 108 A.3d 900, 905 (Pa. Super. 2015). We conclude that it was permissible to try Rian and Sean together, but the court abused its discretion by declining to sever Rian's trial from Damien's trial. The Commonwealth also prejudiced Rian during closing argument by repeatedly referring to the three brothers as a group, thus creating the inference that Rian was guilty by association.

Pennsylvania Rule of Criminal Procedure 582 provides the framework for deciding severance issues. Rule 582 reads in pertinent part

(A) Standards

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

(2) Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

*Id.*

Rule 582 governs two scenarios. The first is when the Commonwealth charges a single defendant in multiple criminal informations and seeks to join the informations for trial. The second is when the Commonwealth seeks to try multiple defendants in one trial, *e.g.*, Rian's case. Judicial analysis of one scenario can provide guidance in analyzing the other scenario. ***See O'Neil***, 108 A.3d at 906 ("The conjoining of the analyses for the separate situations ... is the direct result of a long line of case law"). In both situations, pursuant to Pennsylvania Rule of Criminal Procedure 583, "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." ***Id.***

Consolidation of defendants and charges raises two principal concerns with respect to prejudice that may result from improperly joining charges and/or defendants. First:

> The traditional justification for permissible joinder of offenses or consolidation of indictments appears to be the judicial economy which results from a single trial. The argument against joinder or consolidation is that where a defendant is tried at one trial for several offenses, several kinds of prejudice may occur: (1) [t]he defendant may be confounded in presenting defenses, as where his defense to one charge is inconsistent with his defenses to the others; (2) the jury may use the evidence of one of the offenses to infer a criminal disposition and on the basis of that inference, convict the defendant of the other offenses; and (3) the jury may cumulate the evidence of the various offenses to find guilt when, if the evidence of each offense had been considered separately, it would not so find.

*Commonwealth v. Hamilton*, 303 A.3d 823, 833 (Pa. Super. 2023).

Second:

> [T]he saving of judicial time can never be given preference over the integrity of the factfinding process. When it is concluded that the evidence of the one crime would not be admissible in the separate trial for the other, we are in effect saying that the evidence is irrelevant and prejudicial in the second trial. To allow irrelevant and prejudicial evidence to influence a verdict in the name of judicial economy is abhorrent to our sense of justice. Additionally, defendants in joint trials are treated differently from those who receive separate trials as a result of the lack of uniformity in the admission in the joint trial of evidence which would have been inadmissible in one of the single trials had there been no joinder.

*Id.*

Our Supreme Court's analysis of the *res gestae* doctrine in *Commonwealth v. Lark*, 543 A.2d 491 (Pa. 1988), informs our analysis of

- 43 -

whether it was proper to join Rian and Sean for trial. The defendant in **Lark** was charged with murdering a robbery victim to avoid prosecution, terroristic threats against the assistant district attorney who successfully prosecuted him for the robbery, and kidnapping hostages to prevent his apprehension for prior offenses. The defendant moved to sever these charges on the ground that they were separate and distinct offenses that should not be tried together. The trial court denied the defendant's motion for severance, and the jury found the defendant guilty of all charges. Our Supreme Court affirmed the defendant's judgment of sentence, reasoning:

> [E]vidence of other crimes may be relevant and admissible … where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts. This special circumstance, sometimes referred to as the "res gestae" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, *i.e.,* evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place."
>
> In the instant case, the evidence of each of the offenses—murder, terroristic threats, and kidnapping—would have been admissible in a separate trial for the others. Each of these offenses were interwoven in a tangled web of threats, intimidation and criminal activity which arose from the robbery in 1978 of Tae Bong Cho, and were relevant to prove motive, intent, identity (such a logical connection between the crimes that proof of one naturally tends to show that the accused committed the other), and to "complete the story" by demonstrating the history and natural development of the facts.

*Id.* at 497-98.

- 44 -

Under *res gestae* principles, it was permissible to join Rian and Sean for trial. B.P. alleged that on a single day in 2003 or 2004, (1) Rian assaulted her by smelling her underwear in the DDR room at Adventure Games, (2) Sean told B.P. to leave the DDR room so he could speak with Rian, (3) Sean then took B.P. to another location in the building and directed her to kiss his penis, and (4) Sean warned B.P. not to tell anybody about any of these events. These acts formed the basis for the charges against Rian and Sean. The evidence of one brother's alleged acts would have been admissible in a separate trial against the other brother, and since the entire chain of acts took place on the same day, they were "near in time and place" and part of the "natural development of the facts." **Lark**, 543 A.2d at 497-98.

On the other hand, the court abused its discretion by joining Damien's trial with Sean's and Rian's trial. Our recent decision in **Commonwealth v. Hamilton**, 303 A.3d 823 (Pa. Super. 2023), is instructive. There, three men tried to rob Hamilton who was armed with a gun that he had stolen several days earlier. Hamilton shot two of the assailants, killing one of them. Hamilton was charged in one case with theft of the stolen gun and in a second case with murder, attempted murder, and other charges relating to the shooting. The Commonwealth moved to join the cases for trial on the ground that the stolen gun was involved in both cases. Trial counsel failed to object to joinder. At trial, the Commonwealth repeatedly referred to Hamilton as a thief instead of as a robbery victim. Hamilton argued self-defense. He was

acquitted of murder but found guilty of other charges relating to the shooting. His judgment of sentence was affirmed on direct appeal. Hamilton filed a petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, contending that trial counsel was ineffective for failing to object to joinder of the theft charge with the charges relating to the shooting. The PCRA court denied that portion of his petition.

This Court reversed and remanded for a new trial. We held, *inter alia*, that evidence that the gun was stolen was irrelevant to the sole issue in the shooting case, which was whether Hamilton acted in self-defense. *Id.*, 303 A.3d at 832-33. We also concluded that Hamilton suffered prejudice from trial counsel's failure to object to joinder, because the Commonwealth was able to paint the defendant as a thief rather than as a victim, making it more likely that he would get convicted.

Guided by **Hamilton**, we hold that the trial court abused its discretion by denying Rian's motion to sever his trial from Damien's trial. **Hamilton** held that severance of the charges against the defendant was necessary, because even though there was *some* overlapping evidence between the charges (the gun involved in the theft charge was also used to shoot the victims), the evidence that the defendant stole the gun was irrelevant and prejudicial to his defense against the shooting charges. Analogously, in the present case, there is *some* overlapping evidence between Sean, Rian and Damien: B.P. interacted with all three brothers at Adventure Games and Sean

told B.P. not to tell anyone about any of the brothers' alleged offenses.  Other than these few common strands, however, Damien's alleged offense was irrelevant to both Sean's and Rian's alleged offenses.

Rian's alleged offense, which took place when B.P. was around fourteen years old, was pulling up B.P.'s dress and smelling her underwear.  Damien had nothing to do with this incident.  Damien's alleged offense, forcing B.P. to perform oral sex in a deserted parking lot, took place *two years* after Rian's alleged offense.  Rian had nothing to do with this incident.  Whereas the charges against Rian and Sean involved a single chain of events on the same day, the charges against Rian and Damien involved separate events that took place in different locations, involved different types of conduct, and occurred far apart in time.  Nor was there any conspiracy or corrupt organization charge alleging that the charges against Rian and Damien fit within an ongoing scheme.

Joinder of Rian and Damien enabled the Commonwealth to introduce testimony by Dustin Siniawa into Rian's trial that was only admissible against Damien but not against Rian.  Siniawa testified that in late 2005 or early 2006, he was sitting at a table inside Adventure Games with Damien.  N.T., 10/18/22 (p.m.), at 12-14.  He said that B.P. came up in conversation, and that Damien claimed he "popped her cherry."  *Id.* at 13.  Siniawa testified that he expressed disbelief to Damien's assertion.  *Id.*  In response, Damien screamed Rian's name across the room to get Rian's attention.  *Id.*  Rian was working

- 47 -

across the room but was not sitting at the table or participating in the conversation between Damien and Siniawa. *Id.* Rian looked at Damien from across the room, stuck his tongue out and made a panting sound. *Id.* Notably, the trial court appears to concede that Siniawa's testimony was only relevant against Damien but not against Rian:

> It is apparent from the [r]ecord that the Commonwealth did not elicit said testimony for the purpose of admitting evidence of [Rian's] character, character trait, or his propensity for committing bad acts. Nor did the Commonwealth elicit such testimony to prove that [Rian] committed any offenses between August 25, 2005 and August 24, 2006, rather it is apparent that the Commonwealth elicited such testimony to prove that [Rian's] [c]o-defendant, Damien, committed the crimes charged against him, not [Rian].

Pa.R.A.P. Opinion, 10/8/24, at 13. Likewise, the Commonwealth only argues that this evidence was relevant against Damien, not Rian:

> [B]oth Damien and Rian Mancuso were on trial for sexually assaulting B.P. Rian Mancuso's reaction to his brother yelling out B.P.'s name to him was relevant to the charges against Damien Mancuso in that it provided acknowledgement of potential sexual conduct on the part of Damien Mancuso. The Commonwealth presented this testimony to demonstrate that Damien Mancuso committed the crimes charged against him.

Commonwealth's Brief In Opposition To Rian's appeal, at 19. For the same reasons, we conclude that Siniawa's testimony was not relevant against Rian.

Rian suffered prejudice from joinder of his trial with Damien's trial. The Commonwealth tainted Rian's trial with evidence that only was relevant to Damien, such as Damien's alleged assault against B.P. and Siniawa's testimony. Given that Rian was related by blood to Damien and both brothers

were charged with sexual offenses, the evidence of Damien's sexual offenses smeared Rian in the eyes of the jury.

Additionally, the prosecutor prejudiced Rian by repeatedly lumping him together with his brothers during closing argument. The prosecutor called the brothers "three aggressors" and argued that B.P. had to come forward because "*they* still have the store" and "*they*" still had power over other people" who came to the store. N.T., 10/19/22, at 62, 91. This was misleading because Rian did not own the store; only Sean did.[16] The prosecutor also suggested that B.P. had to testify three separate times with three separate defense attorneys, as if they were all ganging up on her and working together unfairly. *Id.* at 71. The prosecutor argued that "these three men got to sit here and watch her relive all of the sexual abuse," suggesting that they planned their criminal acts together and collectively derived pleasure by making B.P. testify about it in court. *Id.* at 76. The prosecutor likened Rian and his brothers to organizations such as the Catholic Church and Boy Scouts, which had been widely known to have protected sexual abusers among their ranks. *Id.* at 100. All of these remarks encouraged the jury to find Rian guilty by association with his brothers.

---

[16] **See also id.** at 75 (prosecutor echoing same theme by arguing that "[l]ittle nerdy girls are still going [to Adventure Games] for sexy costume parties and for sleepovers with adults. Now, that's why [B.P.] is here. She's doing the right thing for the next crop of inexperienced naive teenage girls who think they found their refuge at Adventure Games").

We acknowledge that the trial court instructed the jury not to consider the evidence against Damien or Sean while deliberating on the charges against Rian. *Id.* at 116-17 ("Each one of the defendants [is] here separately and each one of the counts is separate, such that you are determining, when you look over the jury slip, each count against each defendant in a separate manner and form as to whether or not the Commonwealth has proved them each separately in regard to the crimes"). This instruction, however, does not preclude our determination that Rian suffered prejudice. As Judge Bowes aptly reasoned in *O'Neil*, if jury instructions could cure prejudice in a case where the court erroneously joins defendants for trial, "there would be little grounds for ever severing co-defendants for trial. In virtually every jointly-tried case, the court can and does instruct the jury that it cannot consider exclusive evidence against one defendant as evidence that a co-defendant is guilty." *Id.*, 108 A.3d at 912.

For these reasons, we reverse Rian's judgment of sentence and remand for a new trial.

Although we grant Rian a new trial, we address several of his other arguments because these issues might recur in the next trial. Rian contends that the trial court erred by allowing Siniawa's testimony that Damien bragged about having sex with B.P., testimony that we summarized above in our discussion about the court's failure to sever Rian's trial from Damien's trial. We review the court's evidentiary rulings for abuse of discretion.

*Commonwealth v. Minich*, 4 A.3d 1063, 1068 (Pa. Super. 2010). For the reasons given above, we hold that Siniawa's testimony was irrelevant to the charges against Rian and that Rian suffered prejudice from this testimony. Accordingly, on remand, the court shall preclude the Commonwealth from offering this testimony during Rian's trial.

Next, Rian contends that the trial court's decision to give Standard Jury Instruction 3.19 was an abuse of discretion. We disagree.

Standard Jury Instruction 3.19 provides:

**§3.19 DATE OF CRIME: PROOF OF DATE ALLEGED NOT ESSENTIAL**

[The indictment alleges that the crime was committed on [date].] You are not bound by the date alleged in the [indictment] [information]. It is not an essential element of the crime charged. You may find the defendant guilty if you are satisfied beyond a reasonable doubt that [he] [she] committed the crime charged [in and around] [on or about] the date charged in the [indictment] [information] even though you are not satisfied that [he] [ she] committed it on the particular date alleged in the [ indictment] [information].

*See* Pennsylvania Suggested Standard Criminal Jury Instructions No. § 3.19.

The trial court gave the following instruction relating to § 3.19:

The criminal information for Sean Mancuso alleges that the crimes were committed between Monday, August 25, 2003, and Tuesday, August 24, 2004. The criminal information for Damien Mancuso alleges the crimes were committed again on Thursday, August 25, 2005, through Thursday, August 24, 2006. The criminal information for Rian Mancuso alleges that the crimes were committed between Monday, August 25, 2005, through Tuesday, August 24, 2005. You are not bound by the dates alleged in this information. It is not an essential element of the crime charged. You may find the Defendants guilty if you are satisfied beyond a

reasonable doubt that they committed the crime charged on or about the dates charged in the information even though you're not satisfied that they committed it on a particular date alleged in the information.

N.T., 10/19/22, at 126-27.

Rian argues that this instruction allowed the jury to disregard the time frames and dates set forth in the criminal informations and those testified to by B.P., thereby rendering all of the defense testimony and evidence at trial irrelevant in the eyes of the jury.[17] According to Rian, B.P. testified that Rian committed his offense between August 25, 2003 and December 25, 2003. Rian contends that defense testimony established that this was not possible, since the room where the alleged offense occurred did not exist until March of 2004. He asserts that the instruction negated the probative value of this defense evidence and allowed the jury to disregard the discrepancies in the Commonwealth's evidence.

We review challenges to jury instructions for an abuse of discretion or an error of law. **Commonwealth v. Rush**, 162 A.3d 530, 540 (Pa. Super. 2017). We must consider the charge as a whole, not as isolated fragments. **Id.** We examine the entire instruction "against the background of all evidence

---

[17] Unlike Damien's due process challenge under **Devlin**, neither Rian nor Sean challenge the sufficiency of evidence due to the Commonwealth's inability to more precisely identify the date(s) of their alleged offenses. Rather, both challenges only attack the viability of the § 3.19 jury instruction.

presented, to determine whether error was committed." ***Commonwealth v. Grimes***, 982 A.2d 559, 564 (Pa. Super. 2009).

"A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue." ***Rush***, 162 A.2d at 540. A charge will be found adequate unless the issues are not made clear to the jury or the jury was probably misled by what the trial judge said. ***Id.*** Furthermore, "[o]ur trial courts are invested with broad discretion in crafting jury instructions, and such instructions will be upheld so long as they clearly and accurately present the law to the jury for its consideration." ***Id.***

"Where the trial court's instructions track the Pennsylvania Suggested Standard Criminal Jury Instructions, it is presumed such instructions are an accurate statement of the law." ***Commonwealth v. Akhmedov***, 216 A.3d 307, 321 (Pa. Super. 2019). We have held that "[t]he Commonwealth is not bound by the date laid in the bill of indictment but can show any date within the statutory period and prior to the finding of the indictment, except in cases where time is of the essence of the offense." ***Commonwealth v. Boyer***, 264 A.2d 173, 175 (Pa. Super. 1970). In ***Boyer***, the complaint expressly made time of the essence because "Thursday" was inserted as the day of the crime in the complaint form, which contained the words "insert only if day of week is essential element of offense." ***Id.*** The date alleged in the indictment was December 28, and in reliance on that date, the defendant filed his formal

notice of alibi "for the night of December 28." *Id.* We held that the existence of an alibi defense made the alleged time material to the defendant's case. *Id.* at 176. We also reasoned that since there was no proof that the crime was committed on that date, it was error to submit the case to the jury and refuse the defendant's motion to quash the indictment. *Id.* at 177. The trial court erred by permitting the jury to determine the date of the commission of the offense when the evidence fixed the time as the night of December 27, thus depriving the defendant of his alibi defense. *Id.*

*Boyer* is inapplicable to this case for two reasons. First, no definitive date was alleged either in the information or at trial. Second, although Rian raised an alibi defense during trial by testifying that he was away at college during the time period of his alleged offense (except for several weekends), Rian's brief does not argue that his alibi rendered the jury instruction invalid. *See* Rian's Brief at 25-29 (argument concerning jury instruction 3.19). His brief only argues that the instruction was improper because the evidence showed that the room that B.P. alleged was the site of the assault did not exist at the time of the assault. *Id.* Thus, the general rule stated in *Boyer* applied: the Commonwealth was not bound by the date laid out in the information but could show any date within the statutory period and prior to the finding of the information. *Id.*, 264 A.2d at 175. The jury instruction at issue properly stated that the jury was not bound by the date alleged in the

information because it was not an essential element of the crime charged.[18] The discrepancies in the evidence concerning the room where the alleged assault took place only go to the weight of the evidence. The jury, as factfinder, passed upon the credibility and weight of each witness's testimony and was free to believe all, part or none of the evidence. ***Commonwealth v. Ramtahal***, 613 Pa. 316, 33 A.3d 602, 607 (2011). We can find no case, nor does Rian cite any, in which such discrepancies rendered a jury instruction invalid.

Rian argues next that under ***Brady***, he is entitled to a new trial based upon the Commonwealth's failure to provide witness statements obtained by Detective Mancuso from other patrons of Adventure Games in the course of investigating B.P.'s allegations. We address this issue in detail with respect to Sean's appeal below. We need not do so here, since we have granted Rian a new trial, and he will have the opportunity to request witness statements, if any, from the Commonwealth on remand pursuant to Pa.R.Crim.P. 573.

In his penultimate issue, Rian argues that he suffered prejudice because the evidence at trial was different from the allegations in the original and amended informations. The original and amended informations only alleged that Rian forcefully lifted B.P.'s skirt and smelled her vagina. At trial, however,

---

[18] We do not mean to imply that this instruction would be dispositive of a ***Devlin*** issue. As stated, neither Rian nor Sean raised a ***Devlin*** issue, so we do not address that issue in the context of Sean's or Rian's appeals.

the Commonwealth introduced evidence not mentioned in the original and amended informations—specifically, that Rian forced B.P.'s hand over his pants onto his erect penis. *See* Rian's Brief at 19 (citing several pages in trial transcript). Based on the Commonwealth's reference to this evidence during its opening statement, Rian asked for a mistrial, which the court denied. N.T., 10/17/22, at 28-31. Rian now asks us to vacate his conviction or award him a new trial on this ground. Rian's Brief at 20. Since we have already granted Rian a new trial, we need only address whether Rian is entitled to dismissal of the charges against him with prejudice. We conclude that such relief is not warranted.

In *Commonwealth v. Jones*, 590 Pa. 202, 912 A.2d 268 (Pa. 2006), a first-degree murder case, our Supreme Court considered whether the defendant's due process rights were violated because the criminal informations against him failed to allege that he harbored specific intent to kill. The Court held that the omission did not violate the defendant's constitutional rights. *Id.* at 289. The *Jones* court observed that "[i]ndictments must be read in a commonsense manner, and are not to be construed in an overly technical sense." *Id.* The Court further stated that it had upheld criminal indictments possessing a flaw and found them to be constitutional because they put the defendant on notice of the charge against him. *Id.* (citing *Commonwealth v. Kelly*, 487 Pa. 174, 409 A.2d 21 (1979)) (upholding indictment that charged defendant with possession of heroin when

controlled substance in fact was methamphetamine, because defendant was well advised of nature of offense charged). *Jones* held that the informations gave the defendant adequate notice of the charges against him by accusing him of violating the statutory section for first-degree murder and by stating that he did "feloniously, willfully, and of his malice aforethought kill and murder." *Id.*, 912 A.2d at 289. *Jones* further held that "a purported variance will not be deemed fatal unless it could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right." *Id.* (cleaned up). The variance in *Jones* did not hinder the defendant's ability to prepare a defense or impair a substantial right. *Id.*

Guided by *Jones*, we hold that the introduction of evidence that Rian forcefully placed B.P.'s hand on his erect penis does not require dismissal of the charges against him. The affidavit of probable cause filed at the beginning of this case stated that Rian "grabbed B.P.'s hand and forced it on his erect penis over his pants. B.P. said she was confused and pulled her hand away from his erect penis, & [Rian] then forced her skirt up and pressed his face into her genital region and inhaled deeply." Affidavit of Probable Cause, 2/12/20, at page 3 of 4. Thus, Rian was on notice of this evidence from the outset of the case and was not prejudiced by its introduction during trial. *See Jones*, *supra* (variance between information and evidence presented during

trial is not fatal when it does not hinder defendant's ability to prepare defense or impair substantial right).

Furthermore, despite its omission from the informations, this evidence was admissible as part of the *res gestae* or "history of the case" exception to Pa.R.E. 404(b), which permits the admission of other crimes or bad acts to tell the complete story." ***Commonwealth v. Carter***, 320 A.3d 140, 149 (Pa. Super. 2024). "Other acts evidence is admissible under the *res gestae* exception where it formed a part of a chain, or was one of a sequence of acts, or became part of the history of the event on trial, or was part of the natural development of the facts." ***Id.*** Rian's act of placing B.P.'s hand on his erect penis was admissible as *res gestae* evidence because it was part of the history that led up to the charged conduct of lifting her dress and placing his face into her vaginal area.

Finally, Rian argues that he deserves a new trial because the verdict was against the weight of the evidence. We need not address this argument because of our decision above to grant him a new trial.

## SEAN'S APPEAL

Sean raises the following issues in his appeal, which we as well have reorganized for purposes of convenience:

> 1. Whether the testimony presented was so inconsistent that that the evidence should be declared insufficient to convict the Appellant?

2. Whether the trial court abused its discretion in failing to grant a new trial since the verdict was against the weight of the evidence?

3. Whether [a] mistrial should have been [granted] after it was disclosed that the Commonwealth committed a ***Brady***[19] violation when it withheld statements and interviews of third-party witnesses and/or patrons of Adventure Games and failed to disclose that they even existed until trial?

4. Whether the trial court abused its discretion by issuing Pennsylvania Suggested Standard Jury Instruction § 3.19 since which failed to state a particular date, but instead allowed the jury to consider any time it believed the crime occurred to be sufficient?

5. Whether the trial court imposed an illegal sentence when it failed to merge the IDSI conviction and Indecent Assault of Person less than 16 years of age conviction since the crimes arose from a single criminal act and all statutory elements of one offense are included in the other?

6. Whether the trial court imposed a manifestly unreasonable and excessive sentence in violation of the Sentencing Code and contrary to the fundamental norms which underlie the sentencing process?

Sean's Brief at 6-7.

In his first argument, Sean contends that the testimony presented was so inconsistent that that the evidence was insufficient to convict him. We have summarized the standards for challenging the sufficiency of the evidence in connection with Rian's appeal above. Applying these standards, we conclude that Sean's argument lacks merit.

---

[19] ***Brady v. Maryland***, 373 U.S. 83 (1963).

Sean was convicted of corruption of minors, IDSI and indecent assault. The amended criminal information alleged that these crimes occurred between August 25, 2023, and August 24, 2004.

An individual is guilty of corruption of minors when he, "being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or . . . aids, abets, entices or encourages any such minor in the commission of any crime." 18 Pa.C.S.A. § 6301(a)(1)(i).

B.P. testified that during an uncomfortable conversation with Rian at Adventure Games, Rian took B.P.'s hand and placed it over his pants on his erect penis. N.T., 10/17/22, at 57. B.P. froze at first, then jumped and stood up. *Id.* Rian then lifted the skirt of B.P.'s dress to place his face to her genital area, over her underwear, and inhaled. *Id.* B.P. again froze at first and then let out a yelp. *Id.* at 59. After she yelped, Sean entered the room and told B.P. to wait outside while he talked to his brother. *Id.* When he joined her, they walked to the back of the building, *id.* at 60, where Sean explained to B.P. that "girls like her" could get guys like his brother, Rian, "in trouble." *Id.* He said that it was her responsibility to make sure she did not put herself in positions where "good men" could be "in trouble." *Id.* Sean told B.P. that just like she could get his brother in trouble, he needed to have something on her that he could use to get her in trouble. *Id.* at 60-61.

Sean said, "You're going to have to give me some kisses," which B.P. assumed meant on his face. *Id.* at 61. She tried to comply, but Sean told her that this was not what he meant. *Id.* Sean then undid his jeans and exposed his penis and instructed B.P. that she was to kiss him. *Id.* He specifically instructed her to kiss the tip and the shaft. *Id.* B.P. explained that when Sean exposed his penis, it was becoming erect at that point. *Id.* at 62. After B.P. repeatedly kissed his penis with him directing her how to do it, he smooshed the tip of it into B.P.'s lips. *Id.* Sean then explained to B.P. that he now had something on her because he would tell everyone she was a slut. *Id.* at 63.

B.P. explained that this would be something serious for a 14-year-old girl. *Id.* Sean told B.P. that everyone would find out she was "gross," and that she would lose her friends and her hangout spot. *Id.* Sean also told B.P. that if anybody ever found out he would have to "kill" her. *Id.* She believed him. *Id.* A week or two later, when B.P. had ceased going to Adventure Games as often, Sean told her to keep her attendance because her act of changing her habits in regard to going there would be suspect. *Id.* at 64. This evidence satisfies all elements of corruption of minors against Sean.

The jury found Sean guilty of IDSI under 18 Pa.C.S.A. § 3123(a)(7), which provides that an individual is guilty of IDSI when he engages in "deviate sexual intercourse with a complainant . . . who is less than 16 years of age and the person is four or more years older than the complainant and the

complainant and person are not married to each other." *Id.* The Crimes Code

defines "deviate sexual intercourse" as, *inter alia*, "sexual intercourse per os

or per anus between human beings[.]" 18 Pa.C.S.A. § 3101.

The evidence summarized above demonstrates that when B.P. was 14

years of age, Sean ordered her outside of Adventure Games after his brother,

Rian, assaulted her. When he came outside and walked to the back of the

building with B.P., Sean undid his jeans and exposed his penis and instructed

B.P. that she was to kiss him. He specifically instructed her to kiss the tip

and the shaft of his penis. B.P. explained that when Sean exposed his penis,

it was becoming erect at that point. After B.P. repeatedly kissed his penis

with him directing her how to do it, he pressed the tip of it into B.P.'s lips.

Detective Mancuso testified that Sean's date of birth was April 16, 1970, so

he was clearly four or more years older than B.P.[20] This evidence is sufficient

to sustain Sean's conviction for IDSI.

The jury next found Sean guilty of indecent assault under 18 Pa.C.S.A.

§ 3126(a)(8), which provides that an individual is guilty of indecent assault if

he "has indecent contact with the complainant, causes the complainant to

have indecent contact with the person . . . and . . . the complainant is less

---

[20] Neither the trial court nor the Commonwealth directs us to any evidence that demonstrates that Sean was not married to B.P. at the time of the offense. Nevertheless, this element of IDSI is not at issue, because Sean does not contend in his appellate brief that he was married to B.P. at the time of the offense.

than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other." *Id.* "Indecent contact" means "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

The evidence discussed above demonstrates that Sean undid his jeans and exposed his penis, which was rapidly becoming erect, and instructed B.P., then fourteen years old and more than four years younger than Sean, how to kiss the tip and the shaft of it. After B.P. repeatedly kissed his penis at Sean's direction, he pressed the tip of it into B.P.'s lips. This evidence is sufficient to sustain Sean's conviction for indecent assault.

Sean argues that the evidence against him was insufficient because B.P.'s testimony was inconsistent and in conflict with the testimony presented by the defense. Sean contends that (1) B.P. testified that the incident with Rian in the DDR room took place between August and December of 2003, but the defense demonstrated that the DDR room did not exist until 2004, and (2) there was no evidence that B.P. was at Adventure Games in 2003. The jury, however, was free to believe all, part, or none of B.P.'s testimony. Moreover, the "[e]xistence of inconsistencies in the testimony of a witness does not alone render evidence insufficient to support a verdict." *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003). Under these principles, Sean's attempt

to point out flaws or omissions in B.P.'s testimony falls short of demonstrating that the evidence against him was insufficient.

Sean also argues B.P. was the only witness who testified about his sexual assault. A solitary witness's testimony, however, may establish every element of a sexual offense. 18 Pa.C.S.A. § 3106 (in prosecutions under Chapter 31 of Crimes Code, entitled Sexual Offenses, "[t]he testimony of a complainant need not be corroborated in prosecutions under this chapter"); *see also Commonwealth v. Johnson*, 180 A.3d 474, 480 (Pa. Super. 2018) (citing Section 3106).

For these reasons, Sean's challenge to the sufficiency of the evidence fails.

Next, Sean argues that the trial court abused its discretion by refusing to grant a new trial as the verdict was against the weight of the evidence. We disagree.

The following legal principles apply to a trial court's consideration of a challenge to the weight of the evidence supporting a conviction:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges,

- 64 -

in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court.

*Commonwealth v. Juray*, 275 A.3d 1037, 1046-47 (Pa. Super. 2022). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice."

*Commonwealth v. Best*, 120 A.3d 329, 345 (Pa. Super. 2015).

Sean argues that the evidence should have shocked the court's conscience because there was no physical evidence of crime, B.P.'s testimony was inconsistent and refuted by defense evidence, and there was no corroborating testimony by any other eyewitness. The trial court reasoned, however, that B.P.'s testimony was credible and reliable enough to allow the jury to return a guilty verdict on all of the offenses charged against Sean. Opinion at 21. The court stated, "B.P. testified with enough specificity concerning the sexual encounter with Appellant as it relates to Appellant's actions and the location of said encounter." *Id.* The trial court concluded that, as was within its province, the jury believed that Sean engaged in

nonconsensual indecent contact with victim, B.P., who was a minor at the time. *Id.*

In addition to B.P.'s testimony, Detective Mancuso testified that B.P. contacted her about her involvement with some men that B.P. had in the past. N.T. 10/18/22 p.m., at 21. When the two met, B.P. discussed the assaults between the Mancuso brothers and her that had occurred in the past. *Id.* at 22. Detective Mancuso let B.P. tell the story from beginning, middle, to end, with the detective only interjecting when something was not clear. *Id.* at 23. The two spoke for quite a while about the incidents. *Id.* at 25. Detective Mancuso then gave B.P. a victim statement form, which B.P. took home to fill out and later returned to the detective. *Id.* at 25-26.

Sean argues, as he did concerning the sufficiency of the evidence, that the DDR room did not open until 2004, and that there was no record that B.P. was at Adventure Games in 2003 when she was 14 years old. We agree with the trial court that these perceived flaws in B.P.'s testimony do not warrant a new trial. As the court observed, "[t]he jury was within its province to decide how much weight to give all the evidence presented at trial." Opinion at 22. B.P. testified with sufficient specificity to overcome Sean's objection to the weight of the evidence. The court acted within its discretion in denying Sean a new trial.

Sean next argues that the court should have granted him a mistrial because the Commonwealth violated *Brady* by withholding interviews of

third-party witnesses taken by Detective Michelle Mancuso.  We find no merit in this contention.

Detective Mancuso testified that she interviewed B.P. in the course of investigating the accusation against Damien.  On cross-examination, she testified that she also spoke with "other people" about these accusations. N.T., 10/18/22 (PM), at 36.  Counsel for Damien then cross-examined the detective as follows:

> Q. Who was -- who was that that you talked to with relation to the accusations against **Damien Mancuso** specifically?
>
> A. Well, there was no eyewitnesses to that assault.  So there was nobody that I would talk to that would give me any information regarding … that assault in the car that evening.[21]
>
> Q. [B.P.] testified there were other people at the store the night that Damien gave her a ride; correct?
>
> A. That's correct.
>
> Q. Did you talk to anyone who would have been at the store that time to see if they recalled [B.P.] getting a ride from Damien?
>
> A. Nobody recalled them leaving the store then at that time that I spoke to -- no, there were a few people that I did speak to, but there weren't any eyewitnesses to them leaving the store together.
>
> Q. Who was it that you spoke to?
>
> A. I believe it was Kayla Regan.  There was a few names of people that I did if I -- I don't have the reports in front of me.

---

[21] As discussed above in our analysis of Damien's appeal, Detective Mancuso did not specify the date of "that evening."

Q. Well, you'll agree with me, did you do reports regarding those interviews?

A. Yes, they were -- there were reports done.

Q. And would they have been turned over in discovery? Do you have those reports with you?

A. I don't have them with me now.  No, I don't.  There were interviews done.  Yes, I did do interviews.

*Id.* at 36-37. (Emphasis added). Shortly after this testimony, Detective Mancuso's testimony concluded, and the Commonwealth rested its case-in-chief.  *Id.* at 46.

At that point, counsel for Sean made the following motion:

I make a motion to dismiss for a violation of **Brady**, specifically Detective Mancuso just testified that she authored reports of interviews with witnesses, and that those witnesses testified that they did not see the things she was asking which would have corroborated the victim's version of events.  In that manner those reports are exculpatory.  They were never turned over, never mentioned to anybody until [the detective] took the stand.

*Id.* at 47.  The court denied the motion on the ground that Detective Mancuso never said that the persons in question were there that night.  *Id.* at 48.

In **Brady**, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused…violates due process where the evidence is material either to guilt or to punishment…." **Brady**, 373 U.S. at 87.  Favorable evidence is material and constitutional error results from its suppression "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different." ***Commonwealth v. Hutchinson***, 25 A.3d 277, 310 (Pa. 2011).

To constitute a ***Brady*** violation, the undisclosed evidence must meet three

criteria. Specifically, "[t]he evidence at issue was favorable to the accused,

either because it is exculpatory, or because it impeaches; the evidence was

suppressed by the prosecution, either willfully or inadvertently; and prejudice

ensued." ***Id.***

In response to ***Brady***, our Supreme Court promulgated a rule of

discovery, Pa.R.Crim.P. 305, now renumbered as Pa.R.Crim.P. 573.

***Commonwealth v. Sullivan***, 820 A.2d 795, 802 (Pa. Super. 2003) (noting

that Rules 305 (and 573) promulgated in response to ***Brady***). Rule 573

provides in relevant part:

(B) DISCLOSURE BY THE COMMONWEALTH

(1) MANDATORY:

In all court cases, on request by the defendant, and subject to any
protective order which the Commonwealth might obtain under this
rule, the Commonwealth shall disclose to the defendant's attorney
all of the following requested items or information, provided they
are material to the instant case. The Commonwealth shall, when
applicable, permit the defendant's attorney to inspect and copy or
photograph such items.

(a) Any evidence favorable to the accused that is material either
to guilt or to punishment, and is within the possession or control
of the attorney for the Commonwealth . . .

(E) REMEDY

If at any time during the course of the proceedings it is brought
to the attention of the court that a party has failed to comply with
this rule, the court may order such party to permit discovery or

- 69 -

> inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573.

Decisions involving discovery in criminal cases lie within the trial court's discretion, and its rulings will not be reversed absent abuse of this discretion. ***Commonwealth v. Renninger***, 269 A.3d 548, 565 (Pa. Super. 2022). Although not expressly included in Rule 573(E)'s list of remedies, the trial court has the discretion to dismiss the charges, but only for the most extreme and egregious violations. ***Commonwealth v. Hemingway***, 13 A.3d 491, 502 (Pa. Super. 2011). In most cases where there is a discovery violation, "ordering a continuance will be an adequate remedy." ***Commonwealth v. Smith***, 955 A.2d 391, 395 (Pa. Super. 2008). Where there is no evidence that the Commonwealth intended to provoke the defendant into seeking a mistrial or deprive him of a fair trial, and the evidence is otherwise admissible, the proper remedy for the Commonwealth's failure to disclose exculpatory materials should be less severe than dismissal. ***Id.*** If the only prejudice to the defendant is surprise, a continuance is appropriate, and preclusion of the evidence is an abuse of discretion. ***Id.***

Detective Mancuso's testimony indicates that she interviewed individuals who stated that they did not recall seeing B.P. leave Adventure Games with Damien on the night of the incident. In our view, these interviews

arguably constituted impeachment evidence under ***Brady*** because they cast doubt on B.P.'s version of the events pertaining to Damien's assault. Contrary to the trial court's ruling, the detective's testimony suggests that these individuals were present at Adventure Games on the night of the incident concerning Damien:

> Q. Did you talk to anyone **who would have been at the store that time** to see if they recalled [B.P.] getting a ride from Damien?
>
> A. **Nobody recalled them leaving the store then at that time** that I spoke to -- no, there were a few people that I did speak to, but there weren't any eyewitnesses to them leaving the store together.

N.T., 10/18/22 (PM), at 36 (emphasis added).

Even if the interviews constituted impeachment testimony, the trial court properly exercised its discretion by denying Sean's motion for dismissal. Dismissal is only appropriate for the most extreme and egregious discovery violations. ***Hemingway***, 13 A.3d at 502. The alleged violation here was neither extreme nor egregious because it was not exculpatory as to Sean. It only was (arguably) exculpatory as to Damien. The lone remedy that Sean requested, dismissal, was inappropriate for the Commonwealth's failure to provide evidence that was at most collateral to Sean's defense.[22]

---

[22] Although we affirm for a different reason than the ground given by the trial court, here where the result is correct, we may affirm a lower court's decision on any ground whether or not relied upon by that court. ***Commonwealth v. Lehman***, 275 A.3d 513, 520 n.5 (Pa. Super. 2022).

Next, Sean, like Rian, objects to the court's Section 3.19 jury instruction that it could find him guilty if he committed the charged offenses on or about the period between August 25, 2003, and August 24, 2004. According to Sean, since B.P. testified that the offenses took place in 2003, it was error to permit the jury to find him guilty if it determined the offenses occurred in 2004. Like Rian, Sean assails the instruction as negating the probative value of defense evidence that undermined B.P.'s credibility. For the reasons we explained above in Rian's appeal, we find no merit to this issue in Sean's appeal.

Sean next argues, relying on **Commonwealth v. Tighe**, 184 A.3d 560 (Pa. Super. 2018), that the court imposed an illegal sentence by declining to merge his convictions for IDSI and indecent assault for purposes of sentencing. Upon this ground, we agree.

Whether certain criminal offenses merge for sentencing is a question of law. **Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009). Our "scope of review is plenary and our standard of review is de novo." **Commonwealth v. Williams**, 920 A.2d 887, 889-890 (Pa. Super. 2007).

Our legislature has prescribed, "No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A. § 9765. **Baldwin** explains that "[Section 9765's] mandate is clear. It prohibits merger unless two distinct facts are

present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Id.*, 985 A.2d at 833. "The merger doctrine developed to prevent punishing a defendant more than once for one criminal act." *Commonwealth v. Gatling*, 807 A.2d 890, 894 (Pa. 2002).

There is no dispute that Sean's crimes all arose from a single criminal act—his assault on B.P. in the rear of the Adventure Games building. We thus turn to the second element of merger, whether all statutory elements of indecent assault are included in the statutory elements of IDSI. We hold that they are.

As stated above, Sean was convicted of IDSI under 18 Pa.C.S.A. § 3123(a)(7), which provides that an individual is guilty of IDSI when he engages in "deviate sexual intercourse with a complainant . . . who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other." *Id.* The Crimes Code defines "deviate sexual intercourse" as, *inter alia*, "sexual intercourse per os or per anus between human beings…." 18 Pa.C.S.A. § 3101. Sean also was convicted of indecent assault under 18 Pa.C.S.A. § 3126(a)(8), which prescribes that an individual is guilty of indecent assault if he "has indecent contact with the complainant, causes the complainant to have indecent contact with the person . . . and . . . the complainant is less than 16 years of age and the person is four or more years older than the

complainant and the complainant and the person are not married to each other." *Id.* "Indecent contact" means "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

We held in *Tighe* that the defendant's conviction for indecent assault under Section 3126(a)(8) merged with his conviction for IDSI under Section 3123(a)(7). After reciting the definitions of "deviate sexual intercourse" and "indecent contact," *id.* at 584-85, we held, "Proof of the 'deviate sexual intercourse' element requirement of § 3123(a)(7) satisfies the 'indecent contact' element of § 3126(a)(8). Thus, proof of [IDSI] with a person under sixteen necessarily proved indecent assault of a person under sixteen. Thus, the convictions merge for sentencing purposes." *Id.* at 585. *Tighe* is directly on point with the present case and requires us to conclude that Sean's convictions for IDSI and indecent contact merge for sentencing purposes.

The Commonwealth claims that merger is unnecessary, pointing to our unpublished memorandum decision in *Commonwealth v. Knight*, 2022 WL 17755659 (Pa. Super., Dec. 19, 2022). *Knight* held that the offenses of sexual assault[23] and indecent assault did not merge for sentencing purposes because each statute contains an element not in the other. *Id.*, 2022 WL

---

[23] A person is guilty of sexual assault "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1.

17755659, at *8 ("a conviction of Sexual Assault requires proof of sexual intercourse or deviate sexual intercourse, whereas Indecent Assault requires only "indecent contact").  Based on **Knight**, the Commonwealth argues that the element of deviate sexual intercourse in Section 3123(a)(7) is distinct from the element of indecent contact in Section 3126(a)(8), and therefore **Tighe** was wrongly decided.   **Tighe**, however, is a precedential published opinion, whereas **Knight** is a non-precedential memorandum.  Accordingly, we must follow **Tighe** instead of **Knight**.  **See Commonwealth v. Ealy**, 2023 WL 8923515, *3-4 (Pa. Super., Dec. 27, 2003) (rejecting defendant's reliance on unpublished memorandum decision that conflicted with published opinion in **Commonwealth v. Holt**, 270 A.3d 1230 (Pa. Super. 2022)).

Sean's sentences for IDSI, corruption of minors and indecent assault all ran consecutively.  Because our determination of merger upsets this sentencing scheme, we vacate Sean's judgment of sentence and remand for resentencing.  **Tighe**, 184 A.3d at 585.

Finally, since we are remanding for resentencing, we need not consider Sean's final argument, a claim that his sentence was excessive and unreasonable.

In 280 MDA 2024, Sean Mancuso's convictions are affirmed.  Case remanded for resentencing.

In 432 MDA 2024, Rian Mancuso's judgment of sentence is reversed.  Case is remanded for a new trial.

In 247 MDA 2024, Damien Mancuso's judgment of sentence is reversed.

Jurisdiction relinquished.

Judge Bowes joins the opinion.

President Judge Emeritus Stevens files a concurring statement.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/10/2026